# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **CHEVRON U.S.A., INC.** | **CIVIL ACTION NO. 18-00540** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ATMOS PIPELINE AND STORAGE, LLC** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This action was brought by Plaintiff Chevron U.S.A., Inc. ("Chevron") against Defendant Atmos Pipeline and Storage, LLC ("Atmos") regarding the conveyance of certain property from Chevron to Atmos. Pending before the Court is a Motion for Summary Judgment [Doc. No. 10] filed by Chevron and a Cross-Motion for Summary Judgment [Doc. No. 17] filed by Atmos. For the following reasons, Chevron's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Atmos' Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

In 2002, Chevron became the owner of two tracts of land located on the Anse La Butte Salt Dome, which overlie a hydrocarbon storage cavern ("the Cavern"), and contain a storage well named the Chevron-Propane Storage Well No. 1 and bearing serial number 971205 ("the Well").[1]

---

[1] Atmos contends that Chevron has failed to prove its ownership, but the Court finds that Chevron adequately met its burden by producing the land records and the affidavit of James G. Diehl, a land man with over 36 years of experience. [Doc. No. 22-1, Diehl Affidavit & supporting records]. Diehl who averred that he reviewed the conveyance records of St. Martin

The Well was formerly used to inject propane into the Cavern. In August 2004, Chevron plugged and abandoned the Well.

Approximately one year later, by Special Warranty Deed dated effective August 1, 2005, Chevron conveyed to Atmos the two tracts, totaling approximately 10.77 acres of "land and property, together with all the buildings, facilities, fixtures, equipment, improvements and appurtenances thereunto belonging or in any wise appertaining and not reserved herein to Grantor" located in Section 117, Township 9 South, Range 5 East in St. Martin Parish ("the Property").

Under the deed to Atmos, Chevron made "no representations or warranties concerning the present condition of the Property, including without limitation, the current fitness or suitability of the subterranean cavern or void which underlays the Property and of which in the past has been used for the subsurface storage of hydrocarbons." [Doc. No. 10-3, p. 2]. Chevron further "advised" Atmos "that the Property may have been used for the exploration, production and/or transportation of oil, gas or other minerals." *Id.*

Atmos, as grantee, likewise certified "that said Property has been carefully inspected and that Grantee is familiar with its condition, and the improvements . . . located on the Property, inclusive of any . . . hydrocarbons . . ." [Doc. No. 10-3, p. 2]. Atmos "expressly assume[ed] all risks and liabilities associated therewith" and acknowledged

> that the Property has been or may have been used in connection with the support of oil, gas and other mineral exploration, development and operations . . . and, as such, equipment, appurtenances, processing and other facilities, plants, buildings, structures, improvements, abandoned and other tanks and piping (including above ground and underground tanks and piping), storage facilities, gathering and distribution lines, **wells and other petroleum production facilities and other appurtenances which have not been excepted and excluded from this**

---

Parish, Louisiana, and found that fee ownership was conveyed to Chevron on May 1, 2002. [Doc. No. 22-1, Diehl Affidavit, ¶ 5].

**conveyance may be located thereon.**

[Doc. No. 10-3, p. 2 (emphasis added)].

Exhibit A to the Special Warranty Deed reserves from the sale only the following expressly described property:

> **LESS AND EXCEPT** and reserving unto Grantor any and all unplatted or unrecorded pipelines which may traverse across the above described land and of which are currently in service or that may be used to transport oil, gas, saltwater or refined products from points originating and ending off of the above described premises; provided, **however, it is the intention of Grantor herein to convey to Grantee any and all pipelines on the above described land which may have been previously used in connection with the operation of the now plugged and abandoned Chevron-Propane Storage Well No. 1.**

[Doc. No. 10-3, Exhibit A to Special Warranty Deed (emphasis added)].

As part of their agreement, the Grantee, Atmos, agreed to

> fully defend, protect, indemnify, hold harmless, and render whole Grantor from and against every claim, demand or cause of action, and any liability, cost, expense (including, but not limited to, reasonable attorneys' fees), damage or loss in connection therewith, which may be made or asserted by . . . any third party or parties (including, but not limited to, governmental agencies) with respect to the Property, including without limitation, . . . or any claims . . . caused by, or arising out of, or incidental to the past, present or future condition or state of repair of the Property, or any claims resulting from or attributable to the ownership and use thereof, or this conveyance of the Property, howsoever occurring, including without limitation, whether such claims, injuries, damages, losses and liabilities, with or without fault, were caused by Grantee's sole negligence or contributory negligence, Grantor's contributory negligence, or imposed on said parties or others under any theory of strict liability by operation of law, or any other theory law prior to, at the time of, or subsequent to effective date hereof.

[Doc. No. 10-3, p. 3].

"Without limiting the generality" of the first indemnification clause, Atmos also "expressly" agreed

> to fully and promptly pay, perform and discharge, defend, indemnify and hold harmless Grantor . . . from and against any claim, demand . . . or expense, (including

3

reasonable attorneys' fees) resulting from any environmental claim arising out of any operations conducted, commitment made or any action taken or omitted by Grantor at any time with respect to the Property[.]"

[Doc. No. 10-3, p. 3]. The Special Warranty Deed does not define "environmental claim."

The deed contains no language regarding the operator or operation of the plugged and abandoned Well, or the transfer of operation of the Well, as opposed to ownership.

In 2012, there was a widely publicized collapse of a salt cavern and resulting sinkhole at Bayou Corne in Assumption Parish. Thereafter, in 2014, after a proposed rulemaking period, the Office of Conservation of the Louisiana Department of Natural Resources ("LDNR") adopted regulations directed to existing caverns and storage wells. The 2014 regulations imposed new requirements on owners or operators of wells, such as the Well at issue in this case, including certain subsidence monitoring plans for such wells. The new regulations provide as follows:

> E. Subsidence Monitoring and Frequency. The owner or operator shall prepare and carry out a plan approved by the commissioner to monitor ground subsidence at and in the area of the storage cavern(s). A monitoring report with interpretation shall be prepared and submitted to the Office of Conservation after completion of each monitoring event.
>
> 1. The frequency of conducting subsidence-monitoring surveys for caverns in gas storage shall be every six months.
>
> 2. The frequency of conducting subsidence-monitoring surveys for caverns in liquid storage shall be every 12 months.

43 LA. ADMIN. CODE, PT. XVII, § 323(E). Such monitoring may be required even after closure. *Id.* at §337(B).

On November 6, 2015, the Conservation Office notified Chevron that a "compliance review fee" was due for each Class II Hydrocarbon Storage Cavern and each Class II Solution-Mining Cavern. The Conservation Office further notified Chevron that it had assigned Cavern

4

Code 50-01-01 to the cavern at issue. Chevron did not notify Atmos at the time or provide a copy of the correspondence.

On August 26, 2016, the Conservation Office issued to Chevron as the record operator of the Well a $2,000 invoice for the annual compliance review fee for fiscal year 2015-16. Chevron did not notify Atmos at the time or provide a copy of the invoice.

On December 26, 2016, Atmos sold the Property to Salt Fault, L.L.C.

In a February 24, 2017 letter, Chevron advised the Conservation Office that the Property, which included the Cavern, had been sold to Atmos and asked that the Conservation Office contact Atmos for payment of the invoice.

On April 13, 2017, the Office of Conservation acknowledged Chevron's letter, but stated that it would recognize the operator of record as the responsible party. The letter, styled a "Compliance Notice," instructed Chevron to identify the condition of the Well and Cavern at the time it was plugged and to submit a proposed subsidence monitoring plan for the Well and Cavern. The Office of Conservation did not and has not alleged any subsidence or environmental loss or damage has occurred, but instructed Chevron to comply with the new regulations. The Office of Conservation further instructed Chevron on the proper form that would need to be completed for Atmos to assume operatorship. The form presumes that Atmos, as transferee, would complete at least part of the form.

Chevron transmitted the Compliance Notice to Atmos and requested that Atmos indemnify Chevron and respond to the Office of Conservation's directives.

In a November 14, 2017 letter from its counsel, Atmos declined to respond to the Compliance Notice.

Chevron has performed and is performing the regulatory requirements imposed by LDNR with respect to the Well and has incurred costs in rendering that performance. Chevron has also incurred attorneys' fees in connection with performing its regulatory obligations and enforcing its rights to indemnity under the Special Warranty Deed. Chevron does not allege that any subsidence, environmental loss, or damage has occurred or is occurring on the Property.

On April 19, 2018, Chevron filed the instant Complaint against Atmos, asserting claims for breach of contract for Atmos' alleged failure to perform and failure to reimburse, seeking specific performance by Atmos, and also seeking a declaratory judgment that Atmos has an ongoing obligation to perform any action required by a governmental agency with regard to the Well, Cavern, or any other part of the Property.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co*., 932 F.2d 394, 397 (5th Cir. 1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* at 398 (citing *Nunez v. Superior Oil Co*., 572 F.2d 1119, 1124 (5th Cir. 1978)).

### B. Louisiana Contract and Property Law

Chevron asserts that by application of Louisiana contract and property law it conveyed the Well to Atmos. Atmos disputes this assertion.

"Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." *Marin v. Exxon Mobil Corp.*, 09–2368 (La.10/19/10), 48 So.3d 234, 258; LA. CIV. CODE. ARTS. 1983 and 2045. "When the words of a

7

contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ART. 2046. "The words of a contract must be given their generally prevailing meaning. LA. CIV. CODE ART. 2047. "The Court may consider extrinsic evidence as to the parties' intent only if the contract is ambiguous." *Thorne v. Bard Peripheral Vascular, Inc.*, No. 16-0262, 2016 WL 3746148, at *4 (E.D. La. July 13, 2016) (citing *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002)); *see also Gebreyesus v. F.C. Schaffer & Assocs., Inc.*, 204 F.3d 639, 643 (5th Cir. 2000).

In this case, the contract at issue is the conveying document, the Special Warranty Deed, which conveys "the following described land and property, together with all the buildings, facilities, fixtures, equipment, improvements and appurtenances thereunto belonging or in any wise appertaining and not reserved herein to Grantor." [Doc. No. 10-3, p. 1]. Exhibit A to the Special Warranty Deed provides the legal description of the Property being conveyed. [Doc. No. 1-3, Exh. A]. The only reservation contained in the Special Warranty Deed excepts certain pipelines,[2] but makes clear that "it is the intention of Grantor [Chevron] herein to convey to Grantee [Atmos] any and all pipelines on the above described land which may have been previously used in connection with the operation of the now plugged and abandoned Chevron-Propane Storage Well No. 1." [Doc. No. 10-3, p. 7]. Additionally, Atmos, as Grantee, "acknowledges that the Property has been or may have been used in connection with the support of oil, gas and other mineral exploration, development and operations . . . and as such, . . . wells and other petroleum production facilities and appurtenances **which have not been excepted and excluded** from this conveyance may be located thereon." [Doc. No. 10-3, p. 2 (emphasis added)].

---

[2] The full reservation clause is set forth in the Court's fact section.

8

Further, under Louisiana Civil Code article 469 transfers of an immovable includes its component parts. Wells are considered constructions permanently attached to the ground. *See Billiot v. State*, 94-1365 (La. App. 3d Cir. 4/12/95); 654 So.2d 753, 755, 757 ("In *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La. 1978), it was made clear that the term 'building' as used in the Civil Code is broad enough to include oil wells."). Constructions permanently attached to the ground are component parts of the immovable. LA. CIV. CODE ART. 463. Accordingly, absent exception, an owner transfers any wells on the immovable property as part of the conveyance of that property.

Applying Louisiana contract and property law, the Court finds that Chevron conveyed the Well (and the Cavern) to Atmos under the Special Warranty Deed, and, thus, Atmos became the owner of the Well. Chevron plainly intended to convey the Property, including the "improvements and appurtenances," except for the reserved pipelines, and Atmos plainly accepted that conveyance. The parties' intent for the Well to be conveyed is also clear from the fact that the pipelines to the Well were NOT reserved and by the fact that Atmos acknowledged that "wells and other petroleum production facilities and appurtenances" were located on the Property. If that was not what the parties intended, they were able to and did draft a reservation clause. Accordingly, to this extent, Chevron's Motion for Summary Judgment is GRANTED, and Atmos' Cross-Motion for Summary Judgment is DENIED. However, that does not end the Court's analysis. The Court must now determine whether Atmos owed a duty of indemnity to Chevron.

## C. Indemnification

While the Court has determined that Chevron was no longer the owner of the Well and Cavern, the Office of Conservation placed the responsibility for compliance on Chevron as the registered operator. Therefore, the second issue before the Court is whether Chevron can obtain

indemnification from Atmos for failing to indemnify it for the costs of compliance with the 2014 regulations.

1. **Indemnification of Costs Associated with Regulatory Compliance**

As another judge of this Court has explained:

> "Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed." *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La. 1999). The general rules of contract interpretation apply in construing a contract of indemnity. *Sovereign Ins. Co. v. Texas Pipe Line Co.*, 488 So.2d 982, 984 (La. 1986); *Berry v. Orleans Parish School Bd.*, 830 S2d 283, 285 (La. 2002). . . "Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include." [La. Civ. Code] art. 2051. Courts are to construe an indemnity clause to cover all losses which reasonably appear to have been within the parties' contemplation. *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985) (applying Louisiana law).

*Hilcorp Energy Co. v. JP Oil Co., LLC,* Civil Action No. 6:16CV0598, 2017 WL 352885, at * (W.D. La. Aug. 14, 2017).

To prove a breach of contract (the indemnity provisions of the Special Warranty Deed) under Louisiana law, a party must show that: (1) the obligor had an obligation to perform; (2) the obligor failed to perform; and (3) the obligee sustained injury as a result of the obligor's failure to perform. *Favrot v. Favrot*, No. 1108-09 (La. App. 4th Cir. 2011), 68 So. 3d 1099, 1109. In a breach of contract case, the burden of proof of the elements of recovery is on the plaintiff. *See Sam's Style Shop v. Cosmos Broad. Corp*., 694 F.2d 998, 1004 (5th Cir. 1982).

Under page 3 of the Special Warranty Deed, Atmos agreed to, in pertinent part, "indemnify" Chevron "from and against any claim, demand or cause of action, and any liability, costs, expenses . . . damage or loss in connection therewith, which may be made or asserted by . . . any third party or parties (**including, but not limited to, governmental agencies**) with respect

to the Property[.]" [Doc. No. 10-3, p. 3 (emphasis added)]. Having determined that the Well and Cavern conveyed with the Property to Atmos, the Court also finds that this broadly worded clause requires Atmos to indemnify Chevron for its "liability, costs, expense . . . [and] loss" in connection with the demands made by the Office of Conversation.[3]

Further, the fact that the Office of Conversation, unsurprisingly, chooses to hold the last registered operator responsible when either the operator or the owner could be held liable, does not affect Atmos' duty to indemnify Chevron. *See* 43 La. Admin Code, Pt. XVII, § 3301 (defining owner and operator). In actuality, there is no "operator" of the Well at all because there is no operation when the Well is abandoned and plugged.[4] Chevron is the just the last registered operator of record. While Chevron could have asked Atmos to execute a form for transfer of the operation at the time of the conveyance, the Court finds that its failure to do so does not affect Atmos' responsibilities as owner and under the Special Warranty Deed. Atmos argues that it is no longer a current owner, but, it was, in fact, the owner at the time the regulations issued, and, while the Office of Conservation may have chosen to hold only Chevron accountable, that decision

---

[3]Given these conclusions, the Court need not determine whether Chevron is also entitled to indemnification under the specific indemnity provision addressing claims, demands, or expenses "resulting from any environmental claim arising out of any operations conducted, commitment made or any action taken or omitted by Grantor at any time with respect to the Property[.]" [Doc. No. 10-3, p. 3]. Although the Court is inclined to reject Atmos' narrow reading of an environmental claim to require actual damage or contamination when faced with a demand from a state agency designated to ensure that there is no contamination, the Court finds that the broadly worded general indemnification provision covers this type of claim or demand regardless.

[4]The Court is aware that an "operator" is defined under the Louisiana Administrative Code as "the person recognized by the Office of Conservation as being responsible for the physical operation of the facility or activity subject to regulatory authority under these rules and regulations." 43 LA. ADMIN. CODE PT XVII, Sec. 3301. In this sense, the Court is not applying the administrative definition or taking issue with the Office of Conservation's practices. Rather, the Court means only that, in a practical sense, there is no operator when there is no physical operation taking place at an abandoned and plugged well.

does not affect the analysis on indemnification.

Further, the Court rejects Atmos' argument that the parties could not have contemplated its obligation to indemnify Chevron for compliance with regulations which were not in existence at the time of the conveyance of the Property. When, as here, there is a broad indemnification agreement, the Court properly finds that it was the parties' intent for the grantee, Atmos, to indemnify the grantor, Chevron, for claims, demands, liability, losses, expenses, and costs made or asserted by the Office of Conservation "with respect to the Property," which the Court has found, includes the Well and Cavern. [Doc. No 10-3, p. 3]. When the parties choose to use such broad language, the Fifth Circuit found in a previous decision that "the indemnification agreements were intended to cover all forms of liability," even when, in that case, the statutes did not exist at the time of contracting. *Josly Mnf. Co. v. Koppers Co.*, 40 F.3d 750, 754-55 (5th Cir. 1994) ("We hold that the indemnification agreements were intended to cover all forms of liability including liability under the [the Louisiana Environmental Quality Act], even though the environmental liability under these statutes was not specifically contemplated at the time of contracting.").

The case is even stronger here. While the precise regulations had not yet issued, the LDNR and the Office of Conservation were certainly in existence, and these sophisticated parties in the oil and gas business were well aware of the high level of regulation of their industry. Indeed, the Special Warranty Deed provides that Atmos was bound to indemnify Chevron for claims or demands made by governmental agencies "imposed on said parties or others under any theory of strict liability by operation of law, or any other theory law prior to, at the time of, **or subsequent to effective date hereof**." [Doc. No. 10-3, p. 3]. Thus, this Court finds that Chevron is entitled to indemnity from Atmos based on the clear and unambiguous language of the

Special Warranty Deed. Atmos admittedly failed to perform by reimbursing Chevron, and Chevron sustained injuries by having to pay the cost of the monitoring and for attorneys' fees. To this extent, Chevron's Motion for Summary Judgment is also GRANTED, and Atmos' Cross-Motion for Summary Judgment is DENIED.

### 2. Attorneys' Fees

Chevron also seeks to recover attorneys' fees related to the compliance with the 2014 regulations, as well as the necessity of filing the instant lawsuit. The indemnity provision expressly provides for "reasonable attorneys' fees," and, thus, to the extent that Chevron can prove that its attorneys' fees are reasonable and related to the Office of Conservation's demands and claims, Chevron is also entitled to recover its fees. To this extent, Chevron's Motion for Summary Judgment is GRANTED, and Atmos' Cross-Motion for Summary Judgment is DENIED.

### D. Declaratory Judgment

Chevron also seeks a declaration pursuant to the Special Warranty Deed that "(i) Atmos is obligated to assume all regulatory responsibility for well no. 971205, including satisfying the subsidence monitoring requirements imposed by LDNR with respect to the well and cavern; (ii) . . . to indemnify Chevron for all costs Chevron has incurred in complying with LDNR's demands for subsidence monitoring; and (iii) . . . to reimburse Chevron for its attorneys' fees incurred in enforcing the indemnity under the Special Warranty Deed." [Doc. No. 10, p. 10].

As an initial matter, the Louisiana Code of Civil Procedure article 1871, *et seq.* does not provide a right to a declaratory judgment in federal court because this is a procedural, not a substantive, law. *See State v. Bd. of Sup'rs, La. State Univ. & Agr. & Mech. Coll.*, 228 La. 951,

958, 84 So. 2d 597, 600 (1955) ("The Uniform Declaratory Judgments Act is merely a procedural device by which the courts may make a declaratory finding . . . ."). Under the *Erie* doctrine, this Court applies state substantive law and federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Instead, a declaratory judgment action removed to federal district court is considered under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

> In order to ... meet the standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. Past exposure to illegal conduct does not in itself show a present case or controversy ... To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.

*Bauer v. Texas*, 341 F.3d 352, 358(5th Cir. 2003) (citations and quotations omitted). Declaratory relief is purely discretionary, and courts have the power to dismiss a claim for declaratory relief where it is duplicative of claims asserted in a lawsuit. *Ladd v. Colonial Sav., F.A*, No. 3:13-CV-1817-P, 2014 WL 1393038, at *5 (N.D. Tex. Apr. 10, 2014).

The Court finds, in its exercise of discretion, that Chevron's request for a declaratory judgment should be DENIED. To the extent that Chevron requests a declaratory judgment that it is entitled to indemnification and attorneys' fees, the Court has already found that Chevron conveyed ownership of the Well and Cavern to Atmos under the Special Warranty Deed and that Chevron is entitled to indemnification and related attorneys' fees from Atmos. Thus, there is no remaining controversy in this regard. Further, the Office of Conservation may hold either an

owner or operator responsible under the regulations, and, as noted, Chevron was the operator of record. Therefore, the Court DECLINES to issue a declaratory judgment. To this extent, Chevron's Motion for Summary Judgment is DENIED, and Atmos' Cross-Motion for Summary Judgment is GRANTED.[5]

### E. Specific Performance

Chevron also moved the Court for specific performance of Atmos' "obligation to discharge and perform all regulatory obligations with respect to the [W]ell." [Doc. No. 10, p. 7]. While specific performance is a remedy for breach of contract, Chevron has already performed the obligations to date, and the Court has ordered that it be indemnified. Therefore, the Court finds no basis to order specific performance, and, to this extent, Chevron's Motion for Summary Judgment is DENIED, and Atmos' Cross-Motion for Summary Judgment is GRANTED.

## III. CONCLUSION

For the foregoing reasons, Chevron's Motion for Summary Judgment [Doc. No. 10] is GRANTED IN PART and DENIED IN PART. To the extent that Chevron moves the Court for summary judgment on its claims that the Well and Cavern were conveyed with the Property under the Special Warranty Deed to Atmos, that Atmos breached the indemnification provision of the Special Warranty Deed, and that Atmos is liable for related attorneys' fees to Chevron, the motion is GRANTED. To the extent that Chevron seeks a declaratory judgment and specific performance, the motion is DENIED.

Atmos' Cross-Motion for Summary Judgment [Doc. No. 17] is also GRANTED IN PART

---

[5]To the extent that Atmos contends that it has no responsibility because it has since sold the Property, that issue is not before the Court.

and DENIED IN PART. To the extent that Atmos moved for summary judgment on Chevron's requests for declaratory judgment and its specific performance claim, the Cross-Motion for Summary Judgment is GRANTED. The Cross-Motion for Summary Judgment is otherwise DENIED.

MONROE, LOUISIANA, this 20th day of September, 2018.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE