UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **CHEVRON U.S.A., INC.** | **CIVIL ACTION NO. 18-00540** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ATMOS PIPELINE AND STORAGE, LLC** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

This action was brought by Plaintiff Chevron U.S.A., Inc. ("Chevron") against Defendant Atmos Pipeline and Storage, LLC ("Atmos") regarding the conveyance of certain property from Chevron to Atmos. The Court previously granted in part and denied in part cross motions for summary judgment. Now Atmos has filed a Motion for Default Judgment against Third Party Defendant Salt Fault, L.L.C. ("Salt Fault") [Doc. No. 42].

For the following reasons, the Motion for Default Judgment is GRANTED IN PART and DENIED IN PART.

**I.    FACTS AND PROCEDURAL HISTORY**

In 2002, Chevron became the owner of two tracts of land located on the Anse La Butte Salt Dome, which overlie a hydrocarbon storage cavern ("the Cavern"), and contain a storage well named the Chevron-Propane Storage Well No. 1 and bearing serial number 971205 ("the Well"). The Well was formerly used to inject propane into the Cavern. In August 2004, Chevron plugged and abandoned the Well.

Approximately one year later, by Special Warranty Deed dated effective August 1, 2005,

Chevron conveyed to Atmos the two tracts, totaling approximately 10.77 acres of "land and property, together with all the buildings, facilities, fixtures, equipment, improvements and appurtenances thereunto belonging or in any wise appertaining and not reserved herein to Grantor" located in Section 117, Township 9 South, Range 5 East in St. Martin Parish ("the Property").

Under the deed to Atmos, Chevron made "no representations or warranties concerning the present condition of the Property, including without limitation, the current fitness or suitability of the subterranean cavern or void which underlays the Property and of which in the past has been used for the subsurface storage of hydrocarbons." [Doc. No. 10-3, p. 2]. Chevron further "advised" Atmos "that the Property may have been used for the exploration, production and/or transportation of oil, gas or other minerals." *Id.*

Atmos, as grantee, likewise certified "that said Property has been carefully inspected and that Grantee is familiar with its condition, and the improvements . . . located on the Property, inclusive of any . . . hydrocarbons . . ." [Doc. No. 10-3, p. 2]. Atmos "expressly assume[ed] all risks and liabilities associated therewith" and acknowledged

> that the Property has been or may have been used in connection with the support of oil, gas and other mineral exploration, development and operations . . . and, as such, equipment, appurtenances, processing and other facilities, plants, buildings, structures, improvements, abandoned and other tanks and piping (including above ground and underground tanks and piping), storage facilities, gathering and distribution lines, **wells and other petroleum production facilities and other appurtenances which have not been excepted and excluded from this conveyance may be located thereon.**

[Doc. No. 10-3, p. 2 (emphasis added)].

Exhibit A to the Special Warranty Deed reserves from the sale only the following expressly described property:

**LESS AND EXCEPT** and reserving unto Grantor any and all unplatted or

2

unrecorded pipelines which may traverse across the above described land and of which are currently in service or that may be used to transport oil, gas, saltwater or refined products from points originating and ending off of the above described premises; provided, **however, it is the intention of Grantor herein to convey to Grantee any and all pipelines on the above described land which may have been previously used in connection with the operation of the now plugged and abandoned Chevron-Propane Storage Well No. 1.**

[Doc. No. 10-3, Exhibit A to Special Warranty Deed (emphasis added)].

As part of their agreement, the Grantee, Atmos, agreed to

fully defend, protect, indemnify, hold harmless, and render whole Grantor from and against every claim, demand or cause of action, and any liability, cost, expense (including, but not limited to, reasonable attorneys' fees), damage or loss in connection therewith, which may be made or asserted by . . . any third party or parties (including, but not limited to, governmental agencies) with respect to the Property, including without limitation, . . . or any claims . . . caused by, or arising out of, or incidental to the past, present or future condition or state of repair of the Property, or any claims resulting from or attributable to the ownership and use thereof, or this conveyance of the Property, howsoever occurring, including without limitation, whether such claims, injuries, damages, losses and liabilities, with or without fault, were caused by Grantee's sole negligence or contributory negligence, Grantor's contributory negligence, or imposed on said parties or others under any theory of strict liability by operation of law, or any other theory law prior to, at the time of, or subsequent to effective date hereof.

[Doc. No. 10-3, p. 3].

"Without limiting the generality" of the first indemnification clause, Atmos also "expressly" agreed

to fully and promptly pay, perform and discharge, defend, indemnify and hold harmless Grantor . . . from and against any claim, demand . . . or expense, (including reasonable attorneys' fees) resulting from any environmental claim arising out of any operations conducted, commitment made or any action taken or omitted by Grantor at any time with respect to the Property[.]"

[Doc. No. 10-3, p. 3]. The Special Warranty Deed does not define "environmental claim."

The deed contains no language regarding the operator or operation of the plugged and abandoned Well, or the transfer of operation of the Well, as opposed to ownership.

3

In 2012, there was a widely publicized collapse of a salt cavern and resulting sinkhole at Bayou Corne in Assumption Parish. Thereafter, in 2014, after a proposed rulemaking period, the Office of Conservation of the Louisiana Department of Natural Resources ("LDNR") adopted regulations directed to existing caverns and storage wells. The 2014 regulations imposed new requirements on owners or operators of wells, such as the Well at issue in this case, including certain subsidence monitoring plans for such wells. The new regulations provide as follows:

> E. Subsidence Monitoring and Frequency. The owner or operator shall prepare and carry out a plan approved by the commissioner to monitor ground subsidence at and in the area of the storage cavern(s). A monitoring report with interpretation shall be prepared and submitted to the Office of Conservation after completion of each monitoring event.
>
> 1. The frequency of conducting subsidence-monitoring surveys for caverns in gas storage shall be every six months.
>
> 2. The frequency of conducting subsidence-monitoring surveys for caverns in liquid storage shall be every 12 months.

43 LA. ADMIN. CODE, PT. XVII, § 323(E). Such monitoring may be required even after closure. *Id.* at §337(B).

On November 6, 2015, the Conservation Office notified Chevron that a "compliance review fee" was due for each Class II Hydrocarbon Storage Cavern and each Class II Solution-Mining Cavern. The Conservation Office further notified Chevron that it had assigned Cavern Code 50-01-01 to the cavern at issue. Chevron did not notify Atmos at the time or provide a copy of the correspondence.

On August 26, 2016, the Conservation Office issued to Chevron as the record operator of the Well a $2,000 invoice for the annual compliance review fee for fiscal year 2015-16. Chevron did not notify Atmos at the time or provide a copy of the invoice.

4

By Cash Sale Deed dated December 26, 2016, Atmos sold the Property and Well to Salt Fault. [Doc. No. 42-2, Exh. A, Affidavit of Marshall F. Ordemann ("Ordemann Aff.") and Attached Deed]. The Property included a cavern associated with the well and now bearing Office of Conservation Cavern Code 50-01-01. The deed specifically conveyed the Property in "as-is" condition. Salt Fault, as buyer, acknowledged in the Atmos Deed that:

(a) [Atmos Pipeline and Storage] does not warrant that the Property is free from redhibitory or latent defects or vices;

(b) [Salt Fault and its] agents, consultants and representatives have had a reasonable opportunity to inspect the Property and are familiar with the condition of the Property;

(c) [Salt Fault] waives all warranties and/or representations by [Atmos] or imposed on [Atmos] as a matter of law, as to the condition of the Property, including without limitation, the following:

   i. The warranty of fitness for intended purpose or guarantee against hidden or latent redhibitory vices under Louisiana law, including Louisiana Civil Code Articles 2520 through 2548;

   ii. The warranty imposed by Louisiana Civil Code Article 2475; and

   iii. All rights in redhibition pursuant to Louisiana Civil Code Article 2520, *et seq.*

[Doc. No. 42-2, Deed]. Salt Fault, as buyer, further knew at the time of its purchase that the plugged and abandoned Well was located on the Property; in fact, the property description in the Atmos Deed specifically referred to the Well.

Further, as part of the Deed, Salt Fault expressly assumed the risk that the Property might contain vices or defects and accepted the Property in its then-existing environmental condition:

> [Salt Fault] further assumes the risk as to any vices and defects which are latent and/or not discoverable upon simple inspection, and including those vices or defects, knowledge of which would deter [Salt Fault] from making this acquisition.

5

> [Salt Fault] hereby accepts the Property in its existing environmental condition and waives, discharges, and releases [Atmos] from any and all claims and/or causes of action which [Salt Fault] or its assigns or transferees may have or hereafter be otherwise entitled to, whether affecting person and/or property, for any environmental liabilities arising from the Property, including any claims, demands, causes of action (both public and private), judgments, attorneys' fees, costs, expenses, penalties and fines, imposed or assessed under any federal, state or local environmental law, rule or regulation. (emphasis added).

[Doc. No. 42-2, Deed, at p. 2].

In a February 24, 2017 letter, Chevron advised the Conservation Office that the Property, which included the Cavern, had been sold to Atmos and asked that the Conservation Office contact Atmos for payment of the invoice.

On April 13, 2017, the Office of Conservation acknowledged Chevron's letter, but stated that it would recognize the operator of record as the responsible party. The letter, styled a "Compliance Notice," instructed Chevron to identify the condition of the Well and Cavern at the time it was plugged and to submit a proposed subsidence monitoring plan for the Well and Cavern. The Office of Conservation did not and has not alleged any subsidence or environmental loss or damage has occurred, but instructed Chevron to comply with the new regulations. The Office of Conservation further instructed Chevron on the proper form that would need to be completed for Atmos to assume operatorship. The form presumes that Atmos, as transferee, would complete at least part of the form.

Chevron transmitted the Compliance Notice to Atmos and requested that Atmos indemnify Chevron and respond to the Office of Conservation's directives.

In a November 14, 2017 letter from its counsel, Atmos declined to respond to the Compliance Notice.

Chevron has performed and is performing the regulatory requirements imposed by LDNR with respect to the Well and has incurred costs in rendering that performance. Chevron has also incurred attorneys' fees in connection with performing its regulatory obligations and enforcing its rights to indemnity under the Special Warranty Deed. Chevron does not allege that any subsidence, environmental loss, or damage has occurred or is occurring on the Property.

On April 19, 2018, Chevron filed the instant Complaint against Atmos, asserting claims for breach of contract for Atmos' alleged failure to perform and failure to reimburse, seeking specific performance by Atmos, and also seeking a declaratory judgment that Atmos has an ongoing obligation to perform any action required by a governmental agency with regard to the Well, Cavern, or any other part of the Property.

In July and August 2018, Chevron and Atmos filed cross motions for summary judgment. [Doc. Nos. 10 & 17]. After briefing was complete, on September 20, 2018, the Court issued a Ruling [Doc. No. 25] and Judgment [Doc. No. 26] granting in part and denying in part as to both motions. To the extent that Chevron moved the Court for summary judgment on its claims that the Well and Cavern were part of the property conveyed by Special Warranty Deed to Atmos, that Atmos breached the indemnification provisions of the Special Warranty Deed, and that Atmos is liable to Chevron for related attorneys' fees to Chevron, the motion was granted. To the further extent that Chevron sought a further declaration that Atmos assumed all regulatory responsibility, including the subsidence monitoring requirements imposed by the Office of Conservation of the Louisiana Department of Natural Resources, with respect to the Well and Cavern, as a result of the conveyance, the motion was also granted. However, to the extent that Chevron sought a declaratory judgment otherwise and to the extent that Chevron sought specific performance, the

motion was denied.

To the extent that Atmos moved for summary judgment on Chevron's request for a declaratory judgment and on its specific performance claim, the motion was grante,d but its Cross-Motion for Summary Judgment was otherwise denied.

On January 31, 2019, Atmos filed a Third-Party Complaint against Salt Fault, seeking to recover compliance costs and expenses because Salt Fault is the current owner of the Property. Service was complete on March 8, 2019, and Salt Fault was required to file an answer or responsive pleading. It failed to do so by that time or any time since.

On April 8, 2019, Atmos obtained an Entry of Default. [Doc. No. 41].

After more than fourteen (14) days had elapsed, Atmos filed the instant Motion for Default Judgment. A Notice of Motion Setting [Doc. No. 43] issued and set a time for response as May 28, 2019. Salt Fault has not filed a response.

On May 24, 2019, within the time allowed, Chevron filed a response [Doc. No. 44]. Chevron objects to Atmos' request for a default judgment against Salt Fault "insofar as the request includes a declaration characterizing Chevron's future regulatory obligations as 'elective' or 'voluntary.'" *Id.* at p. 5. Chevron further objects to Atmos' request for a default judgment "to the extent that it could in any way be construed as altering this Court's Judgment that Atmos owes contractual indemnity obligations to Chevron for any work performed in response to the Compliance Order." *Id.*

Atmos did not file a reply.

## II. LAW AND ANALYSIS

### A. Default Judgment

An entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a).

After 14 calendar days have elapsed since the Clerk of Court's entry of default, under Local Rule 55, a party may move for entry of default judgment. Rule 55(b)(2) provides for the entry of a default judgment by the Court, rather than the Clerk of Court, when the movant seeks relief other than a "sum certain." FED. R. CIV. P. 55(b)(1), (2).

### B. Louisiana Contract and Property Law

"Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." *Marin v. Exxon Mobil Corp.*, 09–2368 (La.10/19/10), 48 So.3d 234, 258; LA. CIV. CODE. ARTS. 1983 and 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ART. 2046. "The words of a contract must be given their generally prevailing meaning. LA. CIV. CODE ART. 2047. "The Court may consider extrinsic evidence as to the parties' intent only if the contract is ambiguous." *Thorne v. Bard Peripheral Vascular, Inc.*, No. 16-0262, 2016 WL 3746148, at *4 (E.D. La. July 13, 2016) (citing *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002)); *see also Gebreyesus v. F.C. Schaffer & Assocs., Inc.*, 204 F.3d 639, 643 (5th Cir. 2000).

In this case, the contract at issue is the conveying Cash Sale Deed, which conveyed the Property, including the plugged and abandoned well, in "as-is" condition. Salt Fault, as buyer,

9

acknowledged this in the plain language of the Cash Sale Deed and further expressly assumed the risk that the Property might contain vices or defects and accepted the Property in its then-existing environmental condition. Specifically, Salt Fault accepted the Property "in its existing environmental condition." [Doc. No. 42-2, Deed, at p. 2].

Further, under Louisiana Civil Code article 469 transfers of an immovable includes its component parts. Wells are considered constructions permanently attached to the ground. *See Billiot v. State*, 94-1365 (La. App. 3d Cir. 4/12/95); 654 So.2d 753, 755, 757 ("In *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La. 1978), it was made clear that the term 'building' as used in the Civil Code is broad enough to include oil wells."). Constructions permanently attached to the ground are component parts of the immovable. LA. CIV. CODE ART. 463. Accordingly, absent exception, an owner transfers any wells on the immovable property as part of the conveyance of that property.

Applying Louisiana contract and property law, the Court finds that Atmos conveyed the Well (and the Cavern) to Salt Fault under the Cash Sale Deed, and, thus, Salt Fault became the owner of the Well. Accordingly, to this extent, Atmos' Motion for Default Judgment is GRANTED. However, the Court agrees with Chevron that Atmos is not entitled to a default judgment against Salt Fault insofar as the request includes a declaration characterizing future regulatory obligations as "elective" or "voluntary," as such a request is inconsistent with the Court's prior ruling. To this extent, Atmos' motion is DENIED.

### III. CONCLUSION

For the foregoing reasons, Atmos' Motion for Default Judgment [Doc. No. 42] is GRANTED IN PART and DENIED IN PART. To the extent that Atmos moves the Court for a default judgment that Salt Fault is the owner and operator of the Property, Well, and Cavern, and

to the extent that Atmos seeks reimbursement of costs and expenses following its conveyance to Salt Fault, the motion is GRANTED. To the extent that Atmos seeks a determination or declaration that the undertaking by any party other than Salt Fault of any future maintenance or compliance with regulations or directives of the Office of Conservation is elective and not required pursuant to any obligation owed, the motion is DENIED.

MONROE, LOUISIANA, this 11th day of June, 2019.

						_____
						TERRY A. DOUGHTY
						UNITED STATES DISTRICT JUDGE